* White, J.
Tbe plaintiff claims that tbe land in contro374 . *375 versy under an entry made February 4, 1834; a survey of the 25th of the same month, 1857; and a patent issued on the.10th day of January, 1861.
The defendant—his tax title having been found defective—relics on his possession, taken in June, 1849, and the “ act to give ad ■ ditional security to land titles in this state,” passed March 22,1849, as a bar to the action. 2 Curwen’s Stat. 1494.
This act was repealed on the first day of July, 1853, by section 7, title 2, of the code, which was before the plaintiff obtained his patent, or made his survey; and the immediate question for determination, is, whether, by the sixth section of the code, this case is saved from the operation of the repealing section.
That section is as follows: “This title” (being the title prescribing the time of commencing actions) “shall not apply to actions already commenced, or to cases where the right of action has already accrued; but the statutes now in force shall be applicable to such cases, according to the subject of the action, and without regard to the form,” etc.
The cases to which it is declared the statutes then in force shall be applicable, are cases in which actions had b'een commenced, and cases in which the right of action had accrued.
In the'present case, no action having been commenced at the time of this repeal, had a right of action accrued at that time, within the meaning of the last part of this saving clause?
The subject of the present action is the recovery of lands; and in order to ascertain the sense in which it was designed the terms, “ the right of action has already accrued,” should be understood, we may properly look to the ninth section in the same title of the code, and to the construction that had been put upon prior statues from which the section last named was substantially copied.
The act for the limitation of actions, of 1831 (3 Chase’s Stat. 1768), which was in force until repealed by the code, provided that “ actions of ejectment, or any other action for the recovery of the title, or possession of lands, tenements or hereditaments, *shall be commenced within, twenty-one years after the cause of action shall have accrued, and not after.”
The previous statutes of limitations contained similar provisions in regard to the class of actions referred to.
. Under these statutes it was repeatedly decided by this court, and, in this state, may be regarded as having been settled, that the *376 time prescribed for the limitation of actions did not run in favor of a party in the possession of unpatented lands; that until the emana* tion of the patent no l'ight existed, whereby a party out of the possession of such lands could maintain an action for their recovery; and, that until he acquired such right his cause of action did not accrue. Wallace’s Lessee v. Minor, 7 Ohio, 249; Duke v. Thompson et al., 16 Ohio, 34; Wood v. Lessee of Ferguson, 7 Ohio St. 288.
The ninth section of the code is a substantial transcript of the provision above quoted from the'limitation act of 1831. The only difference consists in the omission of the technical term, action of ejectment, in order to conform to the new system of civil procedure.
By thus incorporating this provision of the act of 1831 into the code, the legislature must be presumed to have intended that its meaning should be the same in the new act that it was in the old; and that the accruing of a cause of action meant identically the same thing in both.
The terms “right of action” and “cause of action,” are equivalent expressions. And it would be unreasonable to infer that the legislature, under the same title, in treating upon the same subject-matter, used the terms in a different sense, in defining the cases to be subjected to the limitations prescribed by the code, from that in which they were used in defining the cases excepted from its operation, and which were to remain subject to the limitations prescribed by prior statutes. It was the manifest understanding of the law-maker that these statutes only applied to cases in which the right of action had accrued; and it was only supposed to be necessary, in order to secure the benefit of these statutes to those who had begun to acquire rights under them, to save from the operation of the repealing section, cases in which'a bright of action had accrued. By saving such cases, the legislature supposed it was saving from the operation of the code all cases upon which existing statutes were operating. And, in our opinion, the “ right of action,” mentioned in section six of the code, as applied to actions for the recovery of real property, means the same thing as “ cause of action,” in section nine.
But it is claimed that the saving effect of the sixth section should bo enlarged, so as to embrace cases where possession had been taken, though no legal title existed whereby the party out of possession could have brought an action for its recovery. This claim is based upon the alleged ground that the act of 1849 runs in favor of the *377 party in possession, without regard to whether a right to maintain an action against him for the recovery of such possession has accrued or not.
If this were the clear meaning of the act, there would be great force in the argument. But such, I apprehend, from a careful consideration of its provisions, is not its true meaning.
The second section, which alone relates to the subject, reads as follows:
“ That no action of ejectment, or other action for the recovery of lands or tenements, shall be brought against any person claiming under or by virtue of any judicial sale, or any sale of forfeited or other lands for taxes, except within seven years after open and notorious possession taken and continued by the defendant or the person or persons under whom he may or shall claim...... But all persons, whose right of action shall or may have occurred [accruedT] before the passage of this act, shall be at liberty to bring their actions at any time within five years after the passage of this act, although the term of seven years hereinbefore limited, may have previously expired. And if any person shall bo an infant or feme covert, or insane, or imprisoned at the time of the adverse entry, he or she shall be entitled to bring his or her action any time within five years after his or her disability shall have been removed. Provided, that nothing herein contained shall, in any case, be construed to extend the time for bringing any action for the recovery of lands or tenements ^beyond the period limited in the second section of the act for the limitations of actions, passed February 18, 1831.”
In the first place it may be remarked, that no inference can be drawn in favor of the construction claimed, from the fact that the first clause of the section includes other actions, besides the action of ejectment. The same language is found in the act of 1831, and the other limitation acts, and was only intended to embrace real actions—the common-law actions for the recovery of realty.
If may.be also noticed, in considering the subject, that a cause of action, as applied to actions for the recovery of lands, implies the concurrence of possession in one party, and a legal right to recover the possession, in another; and where, either expressly or impliedly, a cause of action is required to exist to bring a case within the operation of the statute, the effect is the same, whether the running of the statute is declared to commence from the time the adverse *378 possession begins, or from the time the title was first acquired, on which an action could be brought for its recovery.
The statute in question is both retroactive and prospective in its nature. It applies only to cases of possession taken and continued under a judicial or tax sale, and the rule of limitation proscribed is seven years.
The second clause declares that all whose rights of action may have accrued before the passage of the act, may bring their actions within five years thereafter, although the time of seven years may have previously expired.
The third clause provides that persons under any of the disabilities mentioned, at the time of the adverse entry, may bring their actions within five years after the removal of such disability.
The fourth clause declares that the time for bringing actions shall not be extended beyond the period (twenty-one years) limited in the act of 1831.
The manifest intention was, that the benefit of the five years given within which to sue, after the passage of the act, should apply to all persons affected by its retroactive operation. The second clause declares expressly to whom the benefit of this time is given, viz., those whose causes of action *had accrued before the passage oí the act. The fair implication is that the act, in its retroactive operation, was intended to apply only to those whose causes of action had accrued, otherwise it is but reasonable to suppose a like provision would have been made in favor of those whose causes of action had not accrued.
It is true the second branch of the section is in the nature of a saving clause, but it was not designed to save a class of persons from the operation of the preceding clause, who would, without such reservation, have been governed by it, but to save to all affected by the first clause, time in future within which to sue.
If a literal construction be given to the statute, and the cases within its retroactive operation be regarded as of two classes—(1) those in which a right of action had accrued before the passage of the act; (2) those in which there was no such right—this effect would seem to follow: a person of the first class, against whom there had been an adverse'possession of seven years or more, and whose right to recover the possession at any time had been perfect,, would still have five years within which to bring his action; while *379 a person of the second class, whose fight of action had never accrued, would be cut off at the passage of the act.
A construction leading to such results, all must admit, is wholly inadmissible.
If the foregoing is a correct construction of the act in its retroactive operation; if, thus considered, it embraces only cases where the cause of action has accrued, no ground is perceived on which a different or more enlarged meaning can be given to its prospective operation.
Many reasons might be adduced, besides what has already been stated, why the construction which is claimed on behalf of the defendant should not be given to this statute, upon the consideration of which it is not deemed necessary to enter.
But as illustrating the effect of such construction, we will instance a single supposed case: A mortgage is executed by a tenant for life, purporting to convey the fee of the land in which he has his life estate; or, an execution against such tenant is levied upon the whole estate, which is sold, either *on the execution or on foreclosure of the mortgage, and a deed is made, on confirmation of the sale, purporting to convey the estate in fee. Possession is taken, under ' the sale, and continued for more than seven years, when the tenant-dies, and the right of entry then first accrues to the heir or remainder-man. In such case, would the right of the latter be barred under this statute ? It clearly ought not to be. Yet if the time of limitation, prescribed by the statute, begins to run on the fact of possession taken and continued under a judicial sale, irrespective of there being a right of action in the party out of possession, the owner of the fee would be barred, though he brought his action as soon as his right accrued.
In conclusion, we will only add that it seems to us the object of the act of 1849 was not to subject to its operation cases that were not provided for by the previous act of 1831, but'to prescribe the shorter limitation of seven years, where the possession had been taken and continued under a judicial or tax sale.
Judgment of the district court and of the court of common pleas reversed, and cause remanded to the court last named for further proceedings.
Scott, O. J.. and Dat, Welch, and Brinkerhoee, JJ., concurred.